531 So.2d 124 (1988)
Paul C. HILDWIN, Appellant,
v.
STATE of Florida, Appellee.
No. 69513.
Supreme Court of Florida.
September 1, 1988.
Rehearing Denied October 17, 1988.
*125 James B. Gibson, Public Defender and Larry B. Henderson, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Paula C. Coffman, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Appellant, Paul C. Hildwin, Jr., appeals his conviction by a jury for first-degree murder and the death sentence imposed by the trial court. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant was arrested after cashing a check purportedly written to him by one Vronzettie Cox, a forty-two-year-old woman whose body had been found in the trunk of her car, which was hidden in dense woods in Hernando County. Death was due to strangulation; she also had been raped. Evidence indicated she had been killed in a different locale from where her body was found. Her purse, from which some contents had been removed, was found in dense woods, directly on line between her car and appellant's house. A pair of semen-encrusted women's underpants was found on a laundry bag in her car, as was a sweat-stained wash rag. Analysis showed the semen and sweat came from nonsecretor (i.e., one who does not secrete blood into other bodily fluids). Appellant, a white male, was found to be a nonsecretor; there was testimony that white male nonsecretors make up eleven percent of the population.
The victim had been missing for four days when her body was found. The man she lived with, one Haverty, said she had left their home to wash clothes at a coin laundry. To do so, she had to pass a convenience store. Appellant's presence in the area of the store on the date of her disappearance had come about this way: He and two women had gone to a drive-in movie, where they had spent all their money. Returning home early in the morning, their car ran out of gas. A search of the roadside yielded pop bottles, which they redeemed for cash and bought some gasoline. However, they still could not start the car. After spending the night in the car, appellant set off on foot at 9 a.m. toward the convenience store near the coin laundry. He had no money when he left, but when he returned about an hour and a half later, he had money and a radio. Later that day, he cashed a check (which he later admitted forging) written to him on Ms. Cox's account. The teller who cashed the check remembered appellant cashing it and recalled that he was driving a car similar to the victim's.
The check led police to appellant. After arresting him the police searched his house, where they found the radio and a ring, both of which had belonged to the victim. Appellant gave several explanations for this evidence and several accounts of the killing, but at trial testified that he had been with Haverty and the victim while they were having an argument, and that when Haverty began beating and choking her, he left. He said he stole the checkbook, the ring, and the radio. Haverty had an alibi *126 for the time of the murder and was found to be a secretor.
Appellant made two pretrial statements that are pertinent here. One was a confession made to a cellmate. The other was a statement made to a police officer to the effect that Ms. Cox's killer had a tattoo on his back. Haverty had no such tattoo, but appellant did.
During the penalty phase the state introduced evidence that appellant previously had been convicted of violent felonies in New York and that he was on parole. Appellant's case consisted of testimony from his father, a couple that had raised him after his father had abandoned him, and a friend. The thrust of their testimony was that he had not been a violent person in their dealings with him. In rebuttal the state called a woman who testified that appellant had, five months before Ms. Cox was murdered, committed sexual battery on her. She admitted she had not reported the crime. The jury recommended death by a unanimous vote.
In his order imposing the death sentence, the trial judge found four aggravating circumstances: that appellant had previous convictions for violent felonies; that appellant was under a sentence of imprisonment at the time of the murder; that the killing was committed for pecuniary gain; and that the killing was especially heinous, atrocious, and cruel. He found nothing in mitigation.
Appellant alleges numerous errors pertaining to both guilt and sentence. We find that some merit discussion.

GUILT PHASE

Issue I: An unsworn juror's catching sight of appellant in the custody of the sheriff.
Before the first day of testimony, but after voir dire, a juror arrived at the courthouse early and saw the sheriff's deputies taking appellant from the van that had transported him from the jail. Appellant told his lawyer, who made a motion to disqualify this juror. The panel had not been sworn at this time. In chambers the trial judge and defense counsel questioned the juror, who testified that he drew no inferences from seeing appellant in custody and had not talked to any other jurors about the incident. The judge denied the motion.
The central issue here is one of perception. Appellant now argues that because trial counsel had not exhausted his peremptory challenges, and because the panel had not yet been sworn, the motion to disqualify should be seen as an attempt to backstrike, which the court had no authority to deny. See Rivers v. State, 458 So.2d 762 (Fla. 1984); Jones v. State, 332 So.2d 615 (Fla. 1976). The state points out that defense counsel never used the words "peremptory challenge" and that this was not the nature of his effort to disqualify the juror.
The defense motion was not a peremptory challenge. The defense in a criminal trial need give no reason for exercising its peremptory challenges. It is clear that this was a challenge for cause directed toward the possible taint which may have been caused by the juror seeing appellant in the custody of law enforcement. Thus, the inquiry must focus on whether the denial of the challenge was error.
Our review of the record persuades us that the judge did not abuse his discretion in failing to strike the juror for cause. It is apparent from his answers to questions posed by the judge and counsel that the juror had not made much of the incident and had told none of his fellow jurors. A juror's catching inadvertent sight of a defendant in handcuffs, chains or other restraints (what the juror saw in this regard is not clear) is not so prejudicial as to require a new trial. Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Neary v. State, 384 So.2d 881 (Fla. 1980).

Issue II: The jury being instructed by the judge by means of a note sent to the jury room.
While the jury was deliberating appellant's guilt, it sent a note to the judge asking: "The distance from his home to *127 where the car was found?" The judge called counsel into chambers and informed both sides of the request. He told them he proposed to answer as follows: "You must rely on your memory of the testimony." After both counsel concurred with the response, the judge wrote it on the jury's note and returned it to the jury. The judge did not bring the jury into the courtroom, and there is no indication that the defendant was present in chambers. Appellant seeks the application of the per se rule of reversal established in Ivory v. State, 351 So.2d 26 (Fla. 1977).
The Florida Rules of Criminal Procedure are explicit on this point.
After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them such additional instructions or may order such testimony read to them. Such instructions shall be given and such testimony read only after notice to the prosecuting attorney and to counsel for the defendant.
Fla.R.Crim.P. 3.410. The question the jury asked was within the scope of the rule. See Curtis v. State, 480 So.2d 1277 (Fla. 1985). However, unlike Ivory and Curtis, both counsel were notified and given the opportunity to make their positions known to the judge. Therefore, the only violation of the rule occurred when the judge failed to return the jury to the courtroom. Under the circumstances, this was harmless error. See Meek v. State, 487 So.2d 1058 (Fla. 1986); Stano v. State, 473 So.2d 1282 (Fla. 1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986). Clearly, the appellant suffered no prejudice.

PENALTY PHASE

Issue III: Introduction of rebuttal evidence of an uncharged crime.
Appellant points out that he was not charged with sexual battery in the incident testified to by the state's witness. Therefore, he argues that testimony concerning the alleged attack was inadmissible because it is evidence of collateral crimes, and its presentation to the jury was error. The state responds that the appellant opened the door to this type of evidence by mounting a case that dealt with his nonviolent nature; this incident was relevant to rebut that claim.
At the outset, it must be remembered that there is a different standard for judging the admissibility and relevance of evidence in the penalty phase of a capital case, where the focus is substantially directed toward the defendant's character. See § 921.141(1), Fla. Stat. (1987). In Elledge v. State, 346 So.2d 998, 1001 (Fla. 1977), we pointed out that
the purpose of considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case.
Thus, evidence that would not be admissible during the guilt phase could properly be considered in the penalty phase. Alvord v. State, 322 So.2d 533, 538 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976).
Section 921.141(1); Florida Statutes (1987), relating to sentencing proceedings, provides that
evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the Constitution of the State of Florida.
As noted in Alvord, "[t]here should not be a narrow application or interpretation of *128 the rules of evidence in the penalty hearing, whether in regard to relevance or any other matter except illegally seized evidence." 322 So.2d at 539 (citing State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied sub nom. Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)).
Because no conviction was obtained, evidence such as that introduced in the instant case has been deemed inadmissible to prove the aggravating circumstance of committing a previous violent felony. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). On the other hand, even where the defendant waived the mitigating circumstance of no prior criminal activity, the state was allowed to bring out the defendant's prior misconduct when the defendant opened the door by introducing evidence of his nonviolent character. Parker v. State, 476 So.2d 134 (Fla. 1985). We hold that, during the penalty phase of a capital case, the state may rebut defense evidence of the defendant's nonviolent nature by means of direct evidence of specific acts of violence committed by the defendant provided, however, that in the absence of a conviction for any such acts, the jury shall not be told of any arrests or criminal charges arising therefrom.[1]Cf. Squires v. State, 450 So.2d 208 (Fla.) (in guilt phase of trial, state was permitted to rebut evidence of nonviolent character by showing that defendant had fired a deadly weapon at persons other than the victim), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The court did not err in permitting the rebuttal evidence of the separate incident of sexual battery. Such evidence was more reliable than the reputation evidence which was condemned in Dragovich v. State, 492 So.2d 350 (Fla. 1986).

Issue IV: The finding that the killing was especially heinous, atrocious, and cruel.
The trial judge found that the killing was "especially wicked, evil, atrocious or cruel." To support this finding, the judge made two major points: First, the victim took several minutes to lose consciousness and would have been aware during that time of her impending doom. Second, she was brutally attacked, as evidenced by the torn bra found with the body and by the statement appellant gave to Investigator Phifer that she screamed and begged for help while she was strangled, and that her face turned blue before she lost consciousness.
Appellant argues that because there were no defensive wounds found on the body and because the other evidence of the killing, such as the time it took the victim to die, was not conclusively established, the judge engaged in mere speculation. Appellant argues that the evidence is just as consistent with the premise that the victim died during an especially physical, but nonetheless consensual, sexual encounter.
We disagree that the evidence does not support the judge's finding. The killing clearly meets the test set forth in Dixon, which requires that the murder be accompanied by additional acts that make the crime pitiless and unnecessarily torturous to the victim. 283 So.2d at 9. We have often found that strangulation murders meet this test, and we are not prepared to say that this case, where the evidence points convincingly to a conclusion that the appellant abducted, raped, and slowly killed his victim, does not measure up to that standard.[2] This is especially true in light of the fact that appellant made his victim "acutely aware of [her] impending [death]." Cooper v. State, 492 So.2d 1059, *129 1062 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1330, 94 L.Ed.2d 181 (1987). See also Tompkins v. State, 502 So.2d 415, 421 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987); Johnson v. State, 465 So.2d 499, 507 (Fla.), cert. denied, 474 U.S. 865, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985). The aggravating circumstance that the killing was especially heinous, atrocious, or cruel was established by the evidence in the record beyond a reasonable doubt.

Issue V: The finding that the killing was committed for pecuniary gain.
Relying on the fact that appellant admitted forging one of the victim's checks, the fact that he testified that he needed money, and the fact that he was in possession of the victim's ring and radio, the trial judge found the aggravating factor that the killing was committed for pecuniary gain.
Appellant attacks this finding, saying that while proof of possession of recently stolen property raises an inference that the possessor stole it, possession alone does not prove that the goods were stolen by the defendant. Appellant argues that the circumstantial evidence in this case does not rebut all reasonable hypotheses to the contrary.
We disagree. The evidence, while circumstantial that appellant killed Ms. Cox to get money from her, is substantial. Before he killed Ms. Cox, appellant had no money and was reduced to searching for pop bottles on the road side to scrape up enough cash to buy sufficient gas to get home. After her death he had her property and had forged and cashed a check on her account. The record supports the judge's finding beyond a reasonable doubt that the killing was committed for pecuniary gain.

REMAINING POINTS ON APPEAL
We reject without discussion Hildwin's other arguments: (1) that the trial judge should have instructed the jury as to the minimum and maximum possible penalties; (2) that a witness who had not explicitly testified to a lack of present recollection should not have been permitted to read from notes taken at the time of a conversation; (3) that the evidence was insufficient to sustain the jury's finding of guilt; (4) that the testimony of a state witness regarding his criminal record was improper; (5) that the state should have been required to furnish criminal records of all its witnesses; (6) that the death penalty was unconstitutionally imposed because the jury did not consider the elements that statutorily define the crimes for which the death penalty may be imposed; (7) that the jury instructions on aggravating and mitigating circumstances were misleading; and (8) that the sentencing order was not specific enough.
As we find no merit in any of appellant's arguments, we affirm the judgment of guilt and sentence of death.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.
NOTES
[1] We hasten to add that evidence that the defendant had been a devoted family man or a good provider would not place in issue his reputation for nonviolence.
[2] As did the trial judge, we rely in part on appellant's own statement to Investigator Phifer regarding the killing of Vronzettie Cox. While the appellant gave several statements which were somewhat conflicting, this fact alone does not prevent a court from considering those parts of the statement that bear an indicia of reliability. Johnson v. State, 465 So.2d 499, 506 (Fla.), cert. denied, 474 U.S. 865, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985). The indicia of reliability in the statement given to Investigator Phifer is that it describes the killer as having a cross tattooed on his back, as appellant does. Also, the statement was very detailed.