[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15170
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-21894-JIC

MARBEL MENDOZA,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 11, 2016)

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

HULL, Circuit Judge:

Marbel Mendoza appeals the district court's denial of his pro se motion to substitute counsel for the purpose of assisting him in filing an original habeas petition to the U.S. Supreme Court. After careful review of the record and the briefs, we affirm.

## I.  BACKGROUND

### A.    Mendoza's 1994 Florida Convictions

Following a 1994 jury trial, Mendoza was convicted of six Florida offenses: (1) first-degree felony murder; (2) conspiracy to commit robbery; (3) attempt to commit armed robbery; (4) armed burglary of a dwelling; (5) use of a firearm during the commission of a felony; and (6) possession of a firearm by a convicted felon. Mendoza v. Sec'y, Fla. Dep't of Corr., 761 F.3d 1213, 1216 & n.2 (11th Cir. 2014).

At trial, "the evidence overwhelmingly established that Mendoza planned the robbery [of the victim Conrado Calderon], participated in it, and shot and killed Calderon." Id. at 1218. Mendoza recruited an acquaintance, Humberto Cuellar ("Humberto"), to help him rob Calderon. Id. at 1215-16. Humberto, in turn, recruited his brother Lazaro Cuellar to drive the getaway car. Id. at 1216. Humberto testified as an eyewitness against Mendoza. Id. at 1218.

In addition to Humberto's testimony, the evidence showed that police discovered Mendoza's finger and palm prints on the car parked in Calderon's

driveway.  Id. at 1216.  Further, Calderon died from four bullet wounds, all of which came from the type of gun that Mendoza had.  Id.  Three shots were fired from point-blank range, and the fourth was fired from less than six inches away. Id.

On February 8, 1994, the jury found Mendoza guilty of all counts, including first-degree felony murder.  Id. at 1218.  At the close of the penalty phase, the jury recommended the death penalty by a vote of seven to five, and the Florida trial court sentenced Mendoza to death for his first-degree murder conviction.  Id. at 1225, 1228.

On direct appeal, the Florida Supreme Court affirmed Mendoza's convictions and death sentence.  Mendoza v. State, 700 So. 2d 670, 679 (Fla. 1997).  On October 5, 1998, the U.S. Supreme Court denied Mendoza's petition for certiorari.  Mendoza v. Florida, 525 U.S. 839, 119 S. Ct. 101 (1998).

**B.    State Post-Conviction Proceedings**

Mendoza challenged his Florida convictions in state post-conviction proceedings, raising numerous claims.  Capital Collateral Regional Counsel-South ("CCRC-South") was appointed to represent Mendoza.  On July 8, 2011, the Florida Supreme Court affirmed the denial of post-conviction relief.  Mendoza v. State, 87 So. 3d 644 (Fla. 2011).

**C.    2012-2014 Federal Habeas Proceedings**

On May 21, 2012, the district court appointed CCRC-South to represent Mendoza in his federal habeas proceedings.  CCRC-South filed a comprehensive 28 U.S.C. § 2254 petition.  In a 75-page, July 25, 2013 order, the district court denied the § 2254 petition.

On July 31, 2014, after briefing and oral argument, this Court affirmed the denial of Mendoza's § 2254 petition.  Mendoza, 761 F.3d 1213.  The U.S. Supreme Court denied certiorari.  Mendoza v. Jones, ___ U.S. ___, 135 S. Ct. 1714 (2015).

**D.      2015 Motion for Appointment of Substitute/Supplemental Counsel**

On September 29, 2015, Mendoza filed a pro se motion in the district court "for appointment of substitute counsel / supplemental counsel to prepare and file original habeas corpus petition in the United States Supreme Court."

In his pro se motion, Mendoza stated that he intended to file a petition for writ of habeas corpus in the U.S. Supreme Court, invoking its original jurisdiction and claiming "actual innocence of the death penalty."  Liberally construing his pro se pleading, we consider these to be Mendoza's "actual innocence" claims that he wishes to file in the U.S. Supreme Court: (1) whether his death penalty determination was proper, in light of Enmund v. Florida, 458 U.S. 782, 102 S. Ct. 3368 (1982), and Tison v. Arizona, 481 U.S. 137, 107 S. Ct. 1676 (1987); (2) whether his due process rights were violated when his counsel allegedly argued

4

inconsistent defense theories at trial, in light of Bradshaw v. Stumpf, 545 U.S. 175, 125 S. Ct. 2398 (2005); and (3) whether the Florida Supreme Court engaged in a "cursory or rubber-stamp review" rather than conducting a proper proportionality review, consistent with Proffitt v. Florida, 428 U.S. 242, 96 S. Ct. 2960 (1976).

Mendoza's pro se motion sought appointment of substitute or supplemental counsel to assist in preparing and filing this original habeas petition in the U.S. Supreme Court. Mendoza acknowledged that CCRC-South had already been appointed to represent him in his post-conviction collateral proceedings, both in state and federal court. However, Mendoza argued that substitution of federally appointed counsel is warranted when it would serve the "interests of justice," as articulated by the U.S. Supreme Court in Martel v. Clair, 565 U.S. ___, 132 S. Ct. 1276 (2012). Mendoza argued that here substitution of counsel would serve the interests of justice because a conflict of interest prevented CCRC-South from raising the above-specified claims before the U.S. Supreme Court in an original habeas petition. Mendoza argued CCRC-South's conflict of interest was that it had previously failed to raise these claims in earlier collateral proceedings and to raise them now in an original habeas petition would require CCRC-South to admit its own ineffectiveness.

After the government responded to Mendoza's motion to substitute counsel, in an October 14, 2015 order, the district court denied Mendoza's motion. The

district court explained that Mendoza's motion should be evaluated in light of the factors articulated by the U.S. Supreme Court in Clair.  The district court determined that Mendoza had failed to show that any conflict of interest prevented CCRC-South from raising the claims he wanted to raise before the U.S. Supreme Court in an original habeas petition.  Additionally, the district court reasoned that, to the extent Mendoza's claim was that CCRC-South had been ineffective during his state post-conviction proceedings, such a claim was futile because "there is no freestanding claim of ineffective assistance of collateral counsel" that could proceed in an original habeas petition before the U.S. Supreme Court (citing Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546 (1991)).

On November 3, 2015, Mendoza filed a "motion for rehearing / reconsideration."  After the government filed a response, the district court denied Mendoza's "motion for rehearing / reconsideration" in a November 17, 2015 order.

This appeal followed.

## II.  LEGAL STANDARDS

"In any post conviction proceeding under [28 U.S.C. § 2254]," an indigent prisoner seeking to challenge a death sentence in federal court is "entitled to the appointment of one or more attorneys."  18 U.S.C. § 3599(a)(2).  "[T]he right to the appointment of counsel includes a right to legal assistance in the preparation of a habeas corpus application and thus adheres prior to the filing of a formal, legally

sufficient habeas corpus petition." Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 944 (11th Cir. 2014) (quotation marks omitted). "Once federal habeas counsel has been appointed to represent a state prisoner in a § 2254 proceeding, counsel is required to represent the prisoner 'throughout every subsequent stage of available judicial proceedings,' including 'all available post-conviction process' in state and federal court . . . until he has been 'replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant.'" Id. (quoting 18 U.S.C. § 3599(e)).

In evaluating a prisoner's motion to replace or substitute his counsel, a district court must use the "interests of justice" standard. Clair, 565 U.S. at ___, 132 S. Ct. at 1281. Under this standard, the factors to be considered generally include "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." Id. at ___, 132 S. Ct. at 1287.

The district court's decision on a prisoner's substitution of counsel motion "deserves deference" because it is "so fact-specific." Id. Accordingly, on review this Court "may overturn it only for an abuse of discretion." Id.

Furthermore, a district court may act within its discretion in denying a prisoner's substitution of counsel motion, "even without the usually appropriate inquiry," where the claim a prisoner seeks to pursue with the help of substitute counsel would be futile. See id. at ___, 132 S. Ct. at 1289.

### III. DISCUSSION

In this case, a threshold issue is whether the district court erred in concluding Mendoza had not shown a conflict of interest. But we need not decide this issue because the claims Mendoza seeks to pursue in an original habeas petition to the U.S. Supreme Court would be futile.[1] See id.

### A. Enmund/Tison

Enmund and Tison both addressed whether and when a defendant can be sentenced to death for his involvement in a crime during which another took a life. In Enmund, the Supreme Court held that the Eighth Amendment prohibits the imposition of the death penalty on one who participates in a crime but "who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Enmund, 458 U.S. at 797, 102 S. Ct. at 3376.

In Tison, the Supreme Court reviewed a state's application of the Enmund rule and clarified its definition of "inten[t] that a killing take place or that lethal

---

[1] In his appellate briefs, Mendoza, pro se, mentions only his Enmund/Tison claim and his actual innocence claim. However, out of an abundance of caution in this death-penalty context, we evaluate each claim stated in Mendoza's motion for substitution of counsel in the district court, applying the principles of liberal construction.

force [ ] be employed." The Supreme Court held that a showing that the defendant anticipated or foresaw a killing or use of lethal force is insufficient to establish the "intent" required by Enmund. Tison, 481 U.S. at 150-51, 107 S. Ct. at 1684. However, the Supreme Court determined that a defendant who engages "in criminal activities known to carry a grave risk of death," and whose participation in those activities is "major and whose mental state is one of reckless indifference to the value of human life," may be subject to capital punishment. Id. at 152, 157-58, 107 S. Ct. at 1685, 1688.

Here, Mendoza seeks to argue in an original habeas petition to the U.S. Supreme Court that there was never a reliable determination that he killed, attempted to kill, intended to kill, or committed a crime with reckless indifference to the value of human life. Thus, his death sentence violates the Eighth Amendment, as interpreted by Enmund and Tison.

Mendoza's claim, however, is meritless. During the penalty phase of his trial, the court instructed the jury that it could not recommend the death penalty unless it found that:

> One, the defendant killed, or;
>
> Two, attempted to kill, or:
>
> Three, intended that a killing take place, or;
>
> Four, intended that lethal force be employed, or;

9

Five, the defendant was a major participant in a felony that resulted in the victim's death and his mental state was one of reckless indifference.

The jury therefore heard an Enmund/Tison instruction, and we presume that the jury followed the instruction. Jamerson v. Sec'y Fla. Dep't of Corr., 410 F.3d 682, 690 (11th Cir. 2005). Moreover, the district court made an explicit finding in its sentencing order that the trial evidence "established that the defendant [Mendoza] . . . fired the fatal shots."

Both the judge and jury determined that Mendoza met the Enmund/Tison standard, and Mendoza has pointed to no evidence to overcome their factual findings or show that the findings were not reliable in light of the trial evidence. See Cabana v. Bullock, 474 U.S. 376, 387-88, 106 S. Ct. 689, 697-98 (1986) (instructing that, if the state court or jury made a factual finding about the defendant's Enmund/Tison culpability, "the finding must be presumed correct . . . unless the habeas petitioner can bear the heavy burden of overcoming the presumption"), abrogated on other grounds by Pope v. Illinois, 481 U.S. 497, 107 S. Ct. 1918 (1987). Accordingly, Mendoza's claim is futile.

**B.    Stumpf**

Stumpf was a capital case in which it was unclear whether Stumpf or one of his partners in a robbery killed the victim. Stumpf, 545 U.S. at 178-79, 125 S. Ct. at 2402-03. Stumpf pled guilty to capital aggravated murder, and during the

sentencing hearing, the state argued that Stumpf fired the fatal shots. Id. at 179, 125 S. Ct. at 2403. Later, during one of the co-defendant's trials, and after new evidence emerged, the state argued that the co-defendant was the triggerman, not Stumpf. Id. at 180, 125 S. Ct. at 2403-04.

As a result, Stumpf claimed during his post-conviction proceedings that the prosecutor presented inconsistent theories of the case, in violation of his due process rights. See id. at 182, 125 S. Ct. at 2405. The Supreme Court, however, did not resolve whether there was a due process violation in sentencing Stumpf to the death penalty. Id. at 187-88, 125 S. Ct. at 2407-08. The Supreme Court remanded the issue to the federal appeals court for clarification of its opinion on that subject. Id. The Supreme Court "express[ed] no opinion on whether the prosecutor's actions amounted to a due process violation, or whether any such violation would have been prejudicial." Id. at 187, 125 S. Ct. at 2408.

Mendoza wishes to argue in an original habeas petition to the U.S. Supreme Court that his due process rights were violated when "trial counsel" presented inconsistent theories as to who shot Calderon. Mendoza asserts that Stumpf is the basis for this claim. However, Stumpf did not definitively determine that a petitioner's due process rights are violated by the state's presentation of inconsistent positions. Nor did it comment at all on the effect of a defense

11

attorney—which seems to be what Mendoza's claim is about—making inconsistent claims about whether the defendant was a principal or accessory to the crime.[2]

More importantly, the facts of Mendoza's case are materially distinguishable from Stumpf. In Stumpf, there was a lack of evidence tying any particular robbery defendant to the death. See generally id. In Mendoza's case, however, there was overwhelming eyewitness and forensic evidence that Mendoza was the triggerman. Thus, even assuming arguendo that a petitioner may be entitled to habeas relief for an attorney taking inconsistent positions at trial or sentencing, Mendoza would not be able to show that he was prejudiced by that occurrence. See id. at 187, 125 S. Ct. at 2408 (declining to determine whether the alleged due process violation "would have been prejudicial"); see also Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993) (applying harmless error review to non-structural claims on collateral review). This claim, too, is futile.

## C.    Proffitt

In Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726 (1972), the Supreme Court established that states cannot impose the death penalty arbitrarily and capriciously. See Johnson v. Singletary, 938 F.2d 1166, 1179 (11th Cir. 1991). In response to Furman, Florida recast its capital punishment statutes and required the

---

[2]Mendoza argued in a state post-conviction motion and his § 2254 petition that defense counsel was ineffective for taking inconsistent positions about which Cuellar brother shot the victim. See Mendoza, 87 So. 3d at 652-55. If this is the issue that Mendoza seeks to revive in his original habeas petition to the U.S. Supreme Court, it bears even fewer similarities to a Stumpf due process claim, as defense counsel never argued that Mendoza was the shooter.

trial court to weigh enumerated aggravating and mitigating factors before sentencing a defendant to death.  Proffitt, 428 U.S. at 247-48, 96 S. Ct. at 2964-65.  The Florida Supreme Court then imposed upon itself, through case law, a duty to ensure on direct review that the result reached in a particular capital case was similar to the results reached in other capital cases that presented comparable circumstances.  Id. at 251, 96 S. Ct. at 2966 (citing State v. Dixon, 238 So. 2d 1, 10 (1973)).

In Proffitt, the Supreme Court determined that this capital sentencing scheme, on its face, complied with Furman.  Id. at 253, 96 S. Ct. at 2967.  The Supreme Court also concluded that there was no evidence that the Florida appellate review process was ineffective or arbitrary in practice.  Id. at 258-59, 96 S. Ct. at 2969.  The Supreme Court stated that "any suggestion that the Florida court engages in only cursory or rubber-stamp review of death penalty cases is totally controverted" by its cumulative record of review.  Id.

Mendoza relies on Proffitt to argue that an appellate court violates the Constitution when it conducts "only [a] cursory or rubber-stamp review of death penalty cases," and that he received only this minimal, constitutionally infirm level of review.  However, Proffitt never held that capital punishment violates the Constitution if the appellate court does not review, as Medoza puts it, whether

13

death was the appropriate penalty for the particular defendant and the death sentence was consistent or proportional with other cases.

The Supreme Court has clarified Proffitt and stated that just because "some schemes providing proportionality review are constitutional does not mean that such review is indispensable." Pulley v. Harris, 465 U.S. 37, 44-45, 104 S. Ct. 871, 876 (1984). It concluded that Proffitt and companion cases "did not establish a constitutional requirement of proportionality review." Id. at 48, 104 S. Ct. at 878. "Proportionality review" is simply an "additional safeguard against arbitrarily imposed death sentences," not a constitutional necessity. See id. at 50, 104 S. Ct. at 879.

As there is no constitutional right to Proffitt-style appellate review, Mendoza does not have a viable claim to habeas relief under Proffitt. In any event, we also note that the sentencing court made an explicit finding that Mendoza's death sentence was proportional to sentences in other capital cases, and when Mendoza raised a proportionality claim on direct review, the Florida Supreme Court explained and resolved the claim in a thorough opinion. Mendoza, 700 So. 2d at 678-79. For both of these reasons, Mendoza's proposed Proffitt claim is futile.[3]

---

[3]If Mendoza is attempting to argue that the Florida Supreme Court failed to provide the level of review promised by its own case law, that claim is also futile. A state court's misapplication of state law is not a ground for habeas relief. See McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

**D.    Freestanding Actual Innocence**

It is unclear whether Mendoza plans to raise a separate, freestanding claim of actual innocence in his original habeas petition to the U.S. Supreme Court, or if he plans to demonstrate his "innocence of the death penalty" by succeeding on the above-discussed legal claims.  While it remains an open question whether a freestanding actual innocence claim is even cognizable in a capital habeas case, Johnson v. Ga. Diagnostic & Classification Prison, 805 F.3d 1317, 1324 (11th Cir. 2015), it is clear that what Mendoza is proposing, even liberally construed, will not contain the requisite showing under any articulation of the actual innocence standard.

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).  Mendoza does not plan to claim that he did not kill Calderon; rather, he wishes to argue in his original petition that the evidence was insufficient to convict him, or there were other procedural defects in his criminal and post-conviction proceedings.  Because those claims relate to the legal sufficiency of his conviction and sentence, not his factual innocence of capital murder, he will not be able to obtain relief.  See id.

Relatedly, actual innocence generally requires the presentation of new evidence showing the petitioner's innocence.  Mendoza has not stated that he

15

intends to put forth any new evidence to show that he did not kill Calderon. Accordingly, he cannot demonstrate his actual innocence, and his claim would be futile.

## E.    Ineffective Assistance of Collateral Counsel

Finally, to any extent Mendoza arguably wishes to raise a claim that his state post-conviction counsel was ineffective, such a claim would be futile because it is not cognizable.  The Supreme Court has explicitly held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." Coleman, 501 U.S. at 752, 111 S. Ct. at 2566, abrogated in part by Martinez v. Ryan, 566 U.S. ___, 132 S. Ct. 1309 (2012) (creating a narrow exception that allows petitioners' to claim ineffective assistance of post-conviction counsel as a means of overcoming the procedural default of ineffective-assistance-of-trial/appellate-counsel claims).  Therefore, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings" as a substantive ground for relief.  Id.

## IV.  CONCLUSION

Because each of the claims Mendoza seeks to raise in an original habeas petition to the U.S. Supreme Court would be futile, the district court did not abuse its discretion by denying his motion for appointment of substitute counsel for

16

drafting and filing the proposed petition.  See Clair, 565 U.S. at ___, 132 S. Ct. at 1289.  We affirm the judgment of the district court.[4]

**AFFIRMED.**

---

[4]In the alternative and for the first time on appeal, Mendoza argues that the district court had the inherent authority "to appoint him independent 'supplemental' counsel without regard to the need to discharge and/or substitute" his current CCRC-South counsel.  Mendoza makes this argument on the basis that under 18 U.S.C. § 3599, indigent prisoners are "entitled to the appointment of one or more attorneys."  18 U.S.C. § 3599(a)(2) (emphasis added).

Even had Mendoza made this argument before the district court, the argument is nevertheless without merit.  Because the claims Mendoza seeks to pursue are futile, new counsel would be unable to assist Mendoza with his claims regardless of whether his CCRC-South counsel were discharged.