PER CURIAM.
This case is before the Court on appeal from an order denying an amended motion to vacate a judgment of conviction of first-degree murder and a sentence of death under Florida Rule of Criminal Procedure 3.851. The Court has jurisdiction. See art. V, § 3(b)(1), Fla. Const. As discussed below, we affirm the circuit court’s judgment.

I. FACTS AND PROCEDURAL HISTORY

This is Marbel Mendoza’s third appeal pertaining to this initial rule 3.851 proceeding, arising from a 1994 conviction and death sentence. Mendoza was indicted for first-degree murder, both premeditated and felony murder, as well as other felony counts, associated with the murder of Con-rado Calderon on March 17, 1992. A jury trial was held January 31, 1994, through February 8, 1994, before the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. The jury convicted Mendoza of first-degree felony murder,[1] conspiracy to commit robbery, attempted armed robbery, armed burglary with an assault, and possession of a firearm during the commission of a felony.
The facts underlying Mendoza’s conviction were summarized in the Court’s opinion on direct appeal. Mendoza v. State, 700 So.2d 670, 672 (Fla.1997). Because the Court now addresses Mendoza’s claims on appeal following the denial of postconviction relief, those facts are again set out in detail:
Appellant asked Humberto Cuellar to participate in robbing Conrado Calderon, who owned a mini-market. Humberto asked his brother, Lazaro Cuellar, to act as the getaway driver. The three men observed Calderon’s morning routine at his house in Hialeah. Then, before dawn on the morning of March 17, 1992, the three drove to Calderon’s house where they stopped and waited. When Calderon appeared at his front door at 5:40 a.m., Humberto and appellant hid behind a hedge. Appellant carried a .38 caliber revolver, and Humberto carried a 9 mm automatic pistol. As Calderon left his house and approached his Ford Bronco, Humberto and appellant approached Calderon from the rear and held him in Calderon’s driveway between his Ford and Cadillac automobiles. During the ensuing straggle, Humberto used his gun to hit Calderon on the head. Calderon took out a .38 special revolver and shot Humberto in the chest. The injured Humberto ran to Lazaro’s car. As he ran, Humberto heard other shots. Less than a minute later, appellant arrived at Lazaro’s car and told Humberto that appellant had shot Calderon. No money was taken. The three drove to a hospital in Hialeah. On the way, appellant told Humberto to say that Humberto had been shot by someone who had robbed him.
At the hospital, police recovered Lazaro’s car containing Humberto’s 9 mm automatic pistol. The pistol was still fully loaded and had hair embedded in the slide, which was consistent with the gun having been used to hit someone on the head. The same day, Humberto was taken to the Hialeah Police Station, *649 where he gave a sworn statement that matched his later testimony for the State. When appellant was arrested on March 24, 1992, he had shaved his head and moved out of his normal residence. Items recovered from the scene included a bank bag, which was under the victim and contained $2,089, and other cash which was in Calderon’s pockets and wallet. Appellant’s fingerprints were found on Calderon’s Cadillac, adjacent to where Calderon’s body was found. Calderon’s gun was found under his body. Casings and bullets were recovered from the scene and from the victim’s body. An x-ray of Humberto showed that the bullet lodged near his spine was consistent with Calderon’s .38 special. Three of the four .38 caliber shots that hit Calderon were fired from point-blank range, and the last was fired from less than six inches away.

Id.

Mendoza’s codefendants, brothers Láza-ro and Humberto Cuellar, did not go to trial. Instead, as the Court noted in Mendoza’s direct appeal,
Lazaro Cuellar pled guilty to manslaughter, conspiracy, and attempted armed robbery and was sentenced to ten years in state prison. He did not testify at appellant’s trial. Humberto Cuellar pled guilty to second-degree murder, conspiracy, attempted armed robbery, burglary, and use of a firearm in the commission of a felony. He was sentenced to twenty years in state prison. Humberto testified as an eyewitness for the State at appellant’s trial.
Id. at 672-73.
Following the jury’s guilty verdicts, the case proceeded to the penalty phase of trial. After the presentation of evidence by the defense,[2] by a vote of seven to five, the jury recommended that Mendoza be sentenced to death. A Spencer hearing[3] was held on June 22,1994. The trial court found two aggravating circumstances: (1) Mendoza was previously convicted of a violent felony, and (2) the murder was committed while Mendoza was engaged in the commission of a robbery and for pecuniary gain (aggravators merged). The trial court gave little weight to Mendoza’s evidence of drug use and minimal weight to his mental health evidence. Accordingly, the trial court followed the jury’s recommendation in imposing a sentence of death with respect to the murder conviction.[4]
The Court affirmed Mendoza’s judgment of conviction and sentence on October 16, 1997. Mendoza, 700 So.2d at 679.[5] Men *650 doza subsequently filed his motion for postconviction relief and on September 5, 2000, filed an amended motion raising twenty-seven claims.[6] In 2002, and then in 2007, on appeal from separate orders summarily denying Mendoza’s postconviction amended motion, the Court remanded the proceedings to the circuit court for an evidentiary hearing on Mendoza’s claims of ineffective assistance of trial counsel. See Mendoza v. State, 817 So.2d 848 (Fla.2002) (table); Mendoza v. State, 964 So.2d 121 (Fla.2007).[7]
*651 Following the Court’s most recent remand on May 24, 2007, another circuit judge was assigned to preside over the case. The circuit court scheduled the evi-dentiary hearing to begin on June 9, 2008. Mendoza, on his own motion, sought to discharge appointed counsel on the first day of the hearing. The circuit court heard Mendoza’s motion to discharge before beginning the evidentiary hearing; Mendoza’s motion was denied. The evi-dentiary hearing was held as scheduled. The circuit court issued an order denying postconviction relief on April 1, 2009. That order is the subject of the instant appeal.[8]

II. AMENDED MOTION FOR POSTCONVICTION RELIEF

Mendoza’s appeal raises claims of ineffective assistance of trial counsel pertaining to both the guilt and penalty phases of trial. In addition, Mendoza raises a claim arising after this Court’s remand to the circuit court, challenging the fairness of the postconviction evidentiary hearing based upon the denial of his motion to disqualify the circuit judge and the exclusion of certain testimony and evidence at the evidentiary hearing.
A. Ineffective Assistance of Trial Counsel — Guilt Phase
The standard governing the Court’s review of claims of ineffective assistance of trial counsel is well established. Whether directed at counsel’s performance during the guilt or penalty phase of trial, the defendant must satisfy two requirements:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Ferrell v. State, 29 So.3d 959, 969 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)). Significantly, “[b]ecause both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo.” Johnston v. State, 63 So.3d 730, 737 (Fla.2011).
Review of counsel’s performance “requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Heath v. State, 3 So.3d 1017, 1027 (Fla.2009) (quoting Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. *652 2052, 80 L.Ed.2d 674 (1984)). We recently-said:
“[Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.” Moreover, this Court has held, “That there may have been more that trial counsel could have done or that new counsel in reviewing the record with hindsight would handle the case differently, does not mean that trial counsel’s performance during the guilt phase was deficient.”
Everett v. State, 54 So.3d 464, 478 (Fla.2010) (citations omitted) (quoting Anderson v. State, 18 So.3d 501, 509 (Fla.2009); Strickland, 466 U.S. at 689, 104 S.Ct. 2052; State v. Coney, 845 So.2d 120 (Fla.2003)).
The prejudice prong of the two-part test requires a determination whether the specific deficiency in counsel’s performance rises to the level that there is a reasonable probability that, but for counsel’s unprofessional error, the result of the proceeding would have been different. Strickland> 466 U.S. at 694,104 S.Ct. 2052. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Hutchinson v. State, 17 So.3d 696, 700 (Fla.2009) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
1. Failure to Present a Consistent Defense Theory
Mendoza’s first claim of ineffective assistance of counsel is premised upon trial counsel’s comment in opening statement that codefendant Humberto Cuellar was the shooter, while stating in closing argument that Mendoza’s other codefendant, Lazaro Cuellar, had fired the shot. In his amended rule 3.851 motion, Mendoza argued as follows:
Had counsel either (1) remained consistent with the original defense that Humberto Cuellar shot Calderon, (2) originally asserted that Lazaro Cuellar was the shooter and used the evidence available to support that defense or (3) explained the reason for the sudden change in theories and presented additional evidence that illustrated that Lazaro, as opposed to Humberto, was the shooter, there is a reasonable probability that the jury would have believed Mr. Mendoza over the testimony of Humberto Cuellar. In failing to provide such evidence or explanation, Suri completely lost credibility with the jury and ensured Mr. Mendoza’s conviction.
On appeal, Mendoza relies upon the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (rev. ed. 2003) (ABA Guidelines) to establish that counsel’s performance was deficient. Mendoza argues that, as recognized in Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), the ABA Guidelines “supply a norm as to what amounts to ‘reasonable’ standards of representation in a capital case.” According to Mendoza, counsel’s inconsistent arguments to the jury are contrary to the standard set out in ABA Guideline 10.10.1, providing that counsel should formulate an internally consistent theory of the case. Mendoza argues that as a result of this inconsistency, one which counsel offered no explanation to the jury, “the jury could have concluded nothing else but that Mr. Mendoza had no bona fide defense to the State’s charges and that nothing trial counsel argued had any credibility or validity.”
*653 The Court has previously addressed the role of the ABA Guidelines with respect to evaluating claims of ineffective assistance of counsel in capital cases:
The United States Supreme Court has referred to the ABA standards as “guides to determining what is reasonable.” Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). However, Strickland explains:
In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel’s assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) (“The Defense Function”), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel’s conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.
Id. at 688-89, 104 S.Ct. 2052.
Morton v. State, 995 So.2d 233, 244 (Fla.2008). The ABA Guidelines are not a set of rules constitutionally mandated under the Sixth Amendment and that govern the Court’s Strickland analysis. Rather, the ABA Guidelines provide guidance, and have evolved over time as has this Court’s own jurisprudence.[9] To hold otherwise would effectively revoke the presumption that trial counsel’s actions, based upon strategic decisions, are reasonable, as well as eviscerate “prevailing” from “professional norms” to the extent those norms have advanced over time. See Bobby v. Van Hook, — U.S. -, 130 S.Ct. 13, 17, 175 L.Ed.2d 255 (2009) (reversing federal appellate decision which treated the 2003 ABA Guidelines, announced eighteen years after the defendant had been tried, “as inexorable commands with which all capital defense counsel must comply”).
The Court need not decide whether trial counsel presented an inconsistent defense theory. We note that Mendoza did not establish that the defense theory of the case was that Humberto shot the victim. Rather, as testified to at the hearing by trial counsel, their strategy was that Mendoza did not fire the shot, and that the purpose of the confrontation with the victim was to collect a debt.[10] *654 While counsel’s closing argument concerning who fired the gun differed from that made during his opening statement,[11] there was evidence at trial supporting the defense theory that someone other than Mendoza, either Humberto or Lazaro, committed the murder,
*655 In addition, the jury convicted Mendoza of first-degree felony murder. Thus, the identity of the shooter in this case was not material. See Lowe v. State, 2 So.3d 21, 30-31 (Fla.2008). Further, particularly as Mendoza presented no evidence at the evi-dentiary hearing to establish the shooter’s identity, he has failed to make any demonstration that had counsel presented a consistent defense theory as to the identity of the shooter, codefendant Humberto Cuel-lar’s trial testimony would have been discredited, and, as a result, the jury would have acquitted Mendoza of the underlying felonies.
We affirm the denial of relief on this claim.
2. Failure to Call Lazaro Cuellar as an Available Witness
Mendoza next argues that trial counsel provided ineffective assistance when, though telling the jury during opening statement that he would present the testimony of codefendant Lazaro Cuellar at trial, he failed to do so. According to Mendoza, Lazaro Cuellar would have testified that there had been no attempted robbery.
In denying this claim, the circuit court found that counsel did not present Lazaro Cuellar as a witness on the basis of trial strategy. The circuit court denied relief, as follows:
Defendant contends that counsel was ineffective by stating that they would call Lazaro to testify during opening statements and then not calling him during the trial. Mr. Suri, who this Court finds to be a significantly credible witness, testified that the decision not to call Lazaro was a strategic decision because they did not know if he could be trusted to testify consistent with his deposition, since his brother was a co-defendant. Additionally, he thought a reasonable doubt had been established as to who the shooter was. Mr. Wax, who this Court also finds to be a significantly credible witness, testified that the decision not to call Lazaro was a strategic one, which was discussed with Mr. Suri and the Defendant. He does not recall the reason for this strategy; however, based on the testimony of Lazaro during the evidentiary hearing, this strategic decision was supported. This Court finds that Lazaro Cuellar has no credibility. He was impeached at least 6 times during his brief testimony during the hearing. Additionally, he stated he would not have testified during the trial of the Defendant.
Counsel was not ineffective by failing to call Lazaro, as the court finds that it was a strategic decision. The trial transcript also reveals that the decision not to call Lazaro was a strategic decision. Mr. Wax stated:
Your Honor. I take exception with the state’s position that this was calculated. We intended to call Lazaro Cuellar. That was our trial. Mr. Suri and I spoke extensively before the trial, and our position was that it would be to Mr. Mendoza’s best interest if we did call Mr. Cuellar.
As you know, when we conclude this trial we ask corrections if we could speak with Mr. Mendoza. We went to the jury room and spoke to Mr. Mendoza. The purpose of that was to discuss the possibility of calling Lazaro Cuellar to testify. After hearing the state’s case, the defense made a strategic decision that it would be in Mr. Mendoza’s best interest not to call Lazaro Cueallar [sic]. We felt that would be in his best interest. We made a strategic decision based on the state’s case in chief not to call Lazaro Cuellar, and that is our right.
*656 Mendoza failed to demonstrate that the rationale in which counsel believed he decided not to call Lazaro Cuellar was not supported by competent, substantial evidence. See Burns v. State, 944 So.2d 234, 242-48 (Fla.2006). Nor did Mendoza establish that counsel’s strategy was unreasonable under prevailing norms.
Moreover, Mendoza failed to demonstrate that Lazaro Cuellar was an available witness at the time of trial. Lazaro testified at the evidentiary hearing that he would not have been willing to testify at Mendoza’s trial. Mendoza’s unsupported argument that Lazaro could have been compelled to testify is insufficient to satisfy his burden. To the contrary, testimony at the hearing reflected that the State was seeking to vacate Lazaro’s sentence entered upon a plea agreement due to his inconsistent testimony in a deposition given in Mendoza’s case on October 15, 1993. See also Notice of Appeal, State v. Cuellar, 657 So.2d 972 (Fla. 3d DCA 1995) (No. 94-1253) (State’s notice of appeal filed on May 26, 1994, three months after Mendoza’s conviction). Under the circumstances, Mendoza has not demonstrated that Lazaro could have been compelled to testify on Mendoza’s behalf at the time of trial. See Metellus v. State, 900 So.2d 491, 494 (Fla.2005) (“[C]ompeting versions of ‘the truth’ amount to a substantial noncompliance with the terms of [a codefendant’s] plea agreement and the trial court did not place [the codefendant] in double jeopardy when it resentenced him.”). Mendoza has failed to demonstrate deficient performance or prejudice resulting from counsel’s decision not to call Lazaro Cuellar as a witness. See Melton v. State, 949 So.2d 994, 1003 (Fla.2006) (“If a witness would not have been available to testify at trial, then the defendant will not be able to establish deficient performance or prejudice from counsel’s failure to call, interview, or investigate that witness.”) (quoting Nelson v. State, 875 So.2d 579, 583 (Fla.2004)).
The circuit court properly denied relief upon this claim.
3. Failure to Adequately Prepare and Present Gunshot Residue Evidence
During the guilt phase of trial, defense counsel used a criminalist with the Metro-Dade Police Department, Gopinath Rao, to testify concerning the results of gunshot residue testing on Lazaro and Humberto Cuellar. Evidence established that the shooting occurred at approximately 5:45 a.m. Rao opined that it was more likely than not that Lazaro fired the gun rather than simply handled a gun, on the basis of the analysis of the particles found in the swab taken from Lazaro’s hands at 9 a.m. Rao similarly testified in a deposition taken pre-trial by the defense. Rao testified that he relied upon an “information sheet” included in the swab kit for the time of the swabbing, and admitted during cross-examination that if the swabs were taken at a different time, his opinion would be invalid. The State called Technician Gallagher as a rebuttal witness; he testified that he swabbed Lazaro’s hands at 7:45 a.m. and Humberto’s hands at 8:05 a.m., and that the times were written on the outside of the evidence envelopes. Gallagher’s testimony was consistent with that provided in his deposition.
In rejecting this claim, the circuit court stated the following:
The Defendant alleges counsel was ineffective by failing to properly prepare Criminalist Rao. Both Mr. Wax and Mr. Suri testified that they made a mistake by looking at the wrong tag for the times [the swabs were taken of the Cuel-lars’ hands.] While the time may have been wrong, Rao still testified that Humberto and Lazaro both had gunshot residue on their hands and that it was *657 more likely than not that either man had fired a gun. Even if it were assumed that counsel was ineffective, the Defendant did not show prejudice. Lazaro’s gun, with which [sic] Humberto used to hit the victim, was recovered in the car at the hospital. It was not fired, but it did contain the victim’s hair. Humberto testified that Lazaro never left the car. The Defendant presented no evidence at the evidentiary hearing that either Humberto or Lazaro was the shooter.
We agree that Mendoza failed to demonstrate prejudice based upon counsel’s failure to recognize that Rao and Gallagher identified different times that the swab-bings were done. While Mendoza argues that counsel’s deficient performance permitted the State to discredit the defense and then emphasize to the jury during closing argument that the defense attempted to mislead the jury, the jury convicted Mendoza of felony murder. Thus, the identity of the perpetrator who fired the gun was not relevant to the jury finding Mendoza guilty of first-degree murder. We affirm the denial of relief on this claim.
4. Denial of Right to Counsel Based on Cumulative Effect of Guilt-Phase Errors
Mendoza contends that the Court must grant relief upon the cumulative effect of the errors committed by trial counsel during the guilt phase of trial. We disagree. It is well established that “where individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail.” Griffin v. State, 866 So.2d 1, 22 (Fla.2003); see also Schoenwetter v. State, 46 So.3d 535, 562 (Fla.2010) (citing cases). Thus, only “[w]here multiple errors are found, even if deemed harmless individually [has the Court stated that] ‘the.cumulative effect of such errors’ may ‘deny to defendant the fair and impartial trial that is the inalienable right of all litigants.’ ” Hurst v. State, 18 So.3d 975, 1015 (Fla.2009) (quoting Brooks v. State, 918 So.2d 181, 202 (Fla.2005)).
Upon Mendoza’s direct appeal, the Court found one error occurring during the penalty phase where the trial court allowed evidence concerning pending robbery charges against Mendoza. See Mendoza, 700 So.2d at 677-78. That error was held harmless. Id. The Court did not find trial error with respect to the guilt phase, and, as discussed above, Mendoza’s individual claims of ineffective assistance of counsel at the guilt phase of trial are without merit. Mendoza has failed to demonstrate that he was denied a fair and impartial guilt phase of trial. See Everett, 54 So.3d at 485.
B. Ineffective Assistance of Trial Counsel—Penalty Phase
Penalty phase claims of ineffective assistance of trial counsel are also reviewed under Strickland ⅛ two-prong analysis and this Court’s case law applying that inquiry, as previously discussed. “Penalty phase prejudice under the Strickland standard is measured by whether the error of trial counsel undermines this Court’s confidence in the sentence of death when viewed in the context of the penalty phase evidence and the mitigators and ag-gravators found by the trial court.” Hurst, 18 So.3d at 1013.
1. Failure to Adequately Investigate, Discover and Present Mitigation Evidence
Mendoza argues that counsel failed to conduct any investigation to discover and present mitigating evidence, including evidence of his frontal lobe dysfunction, mental illness, experience as a refugee, extensive drug abuse, and childhood in Cuba. Further, trial counsel failed to obtain rec *658 ords from Cuba and talk with family members there, provide records to Dr. Toomer, conduct a mitigation study, seek neurological testing and neuropsychological evaluation, and have Mendoza evaluated for Post-Traumatic Stress Disorder.
We have previously set out the applicable principles that guide the Court’s consideration of ineffective assistance claims based upon counsel’s alleged failure to investigate and present mitigating evidence:
In these circumstances, to determine whether counsel was ineffective, a court must examine not only counsel’s alleged failure to investigate and present possibly mitigating evidence, but the reasons for doing so. See Wiggins v. Smith, 589 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (“[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.”) (quoting Strickland, 466 U.S. at 690-91[, 104 S.Ct. 2052]); Rose v. State, 675 So.2d 567, 572 (Fla.1996) (stating that in evaluating the competence of counsel “the actual performance of counsel in preparation for and during the penalty phase proceedings, as well as the reasons advanced therefor,” must be considered). Moreover, here, [defendant] must prove his counsel’s performance actually “deprived [him] of a reliable penalty phase proceeding.” Rutherford v. State, 727 So.2d 216, 223 (Fla.1998).
Schoenwetter, 46 So.3d at 555 (quoting Jones v. State, 998 So.2d 573, 582 (Fla. 2008)).
Facts pertinent to resolution of Mendoza’s claim are as follows: At the penalty phase, defense counsel presented the testimony of Mendoza’s mother, Nilia Mendoza, psychologist Dr. Jethro Toomer, and codefendant Humberto Cuellar. Mrs. Mendoza testified as to the family’s experiences in fleeing Cuba, including the abuse they experienced in Cuba and the conditions at the Peruvian Embassy. Dr. Toomer testified, in pertinent part, that Mendoza had reported a psychiatric history when he was in Cuba beginning around age seven involving “supposed experiences with multiple personalities” for which he received treatments in Cuba but not in the United States; Mendoza fell in the 99th percentile for chemical abuse; an extensive drug abuse history dating back to age nineteen, whereby he used alcohol, marijuana, and crack cocaine to self-medicate untreated symptoms as described by Dr. Toomer; some degree of brain damage or organic impairment, which may be a factor in overall functioning and behavior; “inferiority, poor self esteem, impulsivity and irrational behavior and that is changes in mood shifts or behavioral changes from time to time”; Mendoza had experienced auditory and visual hallucinations and was in the 99th percentile with respect to thought disturbance; antisocial tendencies; and self-depreciation. Dr. Toomer also testified to his observation of Mendoza’s gradual deterioration between the time of his four visits, including heightened agitation, nervousness, sweating, reported auditory and visual hallucinations. In conclusion, Dr. Toomer testified that Mendoza suffers from “very significant deficits in terms of his reality testing.” Humberto Cuellar testified that the plan was to commit a robbery and not a killing. In addition, the defense introduced Mendoza’s childhood medical record from Cuba.
The jury recommended a sentence of death by a seven-to-five vote. At the time of the Spencer hearing, trial counsel submitted a report prepared by Dr. Eisen *659 stein, a neuropsychologist appointed subsequent to the penalty phase to evaluate Mendoza. Also admitted as part of the record was the deposition taken by the State of Dr. Eisenstein. The State presented the testimony of Dr. Aguilar Fuentes, a psychologist, in rebuttal to Dr. Eisenstein’s report. Both doctors conducted neuropsychological tests on Mendoza; while Dr. Eisenstein tested Mendoza using English, Dr. Fuentes tested him in Spanish. Dr. Fuentes disagreed with Dr. Eisenstein’s conclusion that there was left hemisphere involvement demonstrating mild impairment. Instead, she testified that some of Dr. Eisenstein’s results were obtained because the tests were given in English, which she did not believe Mendoza spoke fluently. Dr. Fuentes concluded that Mendoza was moderately impaired where a language barrier interferes with his understanding or ability to express himself in English, thus making it appear that he was impaired. Mendoza’s mother also testified, briefly explaining to the trial judge the family circumstances.
The trial court found no mitigating circumstances after giving little weight to Mendoza’s alleged drug use and minimal weight to his mental health claims as non-statutory mitigation. In sentencing Mendoza to death, the trial court found two aggravating factors: (1) Mendoza was previously convicted of a violent felony, and (2) the murder was committed while Mendoza was engaged in the commission of a robbery and for pecuniary gain (aggrava-tors merged).
In support of this claim, Mendoza presented testimony at the evidentiary hearing from attorney Steven Potolsky, psychiatrist Dr. Eugenio Rothe, psychologist Dr. Ricardo Weinstein, Dr. Debra Mash, a professor of neurology and pharmacology, Beatrice Roman, a social worker living in Peru who works with Cuban refugees, psychologist Dr. Jethro Toomer, and Dr. Thomas Hyde, a specialist in behavioral neurology and neuropsychology.
Upon careful review of both the penalty-phase transcript and the evi-dentiary hearing transcript, we agree with the circuit court that the jury and trial judge heard the childhood, medical, and psychological information that Mendoza alleged counsel failed to discover and present. As often stated, the presentation of cumulative evidence in the postconviction proceedings does not provide a basis for determining that trial counsel’s performance was deficient. Kilgore v. State, 55 So.3d 487, 504 (Fla.2010). Rather than the failure to investigate and present mitigating evidence, Mendoza takes issue with the manner in which trial counsel presented the evidence at trial. This is not, however, a proper basis to establish deficient performance on the part of trial counsel. See Everett, 54 So.3d at 478 (“That there may have been more that trial counsel could have done or that new counsel in reviewing the record with hindsight would handle the case differently, does not mean that trial counsel’s performance during the guilt phase was deficient.”) (quoting State v. Coney, 845 So.2d 120, 136 (Fla.2003)). In addition, the fact that Mendoza later found an expert whose testimony may be more favorable as to the degree of his mental status impairment does not establish that trial counsel’s investigation was deficient. See Anderson v. State, 18 So.3d 501, 512 (Fla.2009) (stating that trial counsel is not required to continue searching for an expert who will give a more favorable mental status assessment). Indeed, Mendoza’s own legal expert testified at the evidentia-ry hearing that at the time of Mendoza’s trial, he also had used Dr. Toomer as a mental health expert in a capital case.
*660 2. Opening the Door to Allow the State to Present Evidence of Mendoza’s Pending Charges for Robbery with a Firearm
Mendoza next argues that trial counsel was ineffective during the penalty phase, having opened the door for the State to present evidence of pending charges against the defendant for robbery with a firearm.
Mendoza failed to properly raise this claim before the circuit court in his rule 3.851 motion. Accordingly, the claim is not reviewable for the first time on appeal. See Hutchinson, 17 So.3d at 703 n. 5. We deny this claim as procedurally barred. See Franqui v. State, 965 So.2d 22, 32 (Fla.2007).
Alternatively, we find determinative the Court’s decision on direct appeal addressing Mendoza’s alleged trial court error arising from denial of his objection to the testimony and motion for mistrial. See Mendoza, 700 So.2d at 675-78. In pertinent part, the Court addressed the substantive claim as follows:
[W]e conclude that it was proper to cross-examine Dr. Toomer as to his knowledge of appellant’s involvement in other robberies. However, the trial court erred in overruling appellant’s objection to the State’s question to Dr. Toomer during cross-examination and the comment in the State’s closing argument asking whether Dr. Toomer was aware that the defendant had a pending trial in other robberies using a firearm. This violated our prohibition against telling the jury of any arrests or criminal charges arising from specific bad acts. Hildwin[ v. State], 531 So.2d [124,] 127 [ (Fla.1988) ].
We have found that erroneously admitted evidence concerning a defendant’s character in a penalty phase is subject to a harmless error review under State v. DiGuilio, 491 So.2d 1129 (Fla.1986). See Peterka v. State, 640 So.2d 59, 70 (Fla.1994). We have reviewed the record as to whether the error in permitting the question which referred to the “pending trial in other robberies” and “using a firearm” in the cross-examination of Dr. Toomer and the argument by the State which repeated that question were harmless beyond a reasonable doubt. We have determined that the question and statement concerning the pending charges were isolated rather than emphasized and were not the focus of either the cross-examination or the argument. The focus of both the cross-examination and the State’s argument was properly upon the extent of Dr. Toomer’s knowledge of appellant’s history of “prior areas of problems or difficulty,” upon which Dr. Toomer testified on direct examination that he had relied in forming his opinion that appellant could be rehabilitated. Furthermore, in contrast to this isolated reference to the pending trial for other robberies, the jury heard live testimony from a witness named Robert Street, who testified that he had been the victim of a robbery. Evidence was presented that on April 16, 1993, appellant was convicted in connection with that same robbery of charges of robbery with a firearm, aggravated battery, burglary of a conveyance with a firearm, and use of a firearm in the commission of a felony. Mr. Street identified appellant as the person who had the gun and who participated in beating him during the commission of those crimes. It was the convictions for armed robbery and possession of a firearm in the commission of a felony in the robbery and the beating of Mr. Street which the trial court used as the basis for the prior violent felony aggravator. The test for harmless error is whether *661 there is a reasonable possibility that the error affected the verdict. DiGuilio. We conclude on the basis of this record that there is no reasonable possibility that the isolated references to the pending charges affected appellant’s sentence of death, and therefore the error was harmless beyond a reasonable doubt.
700 So.2d at 677-78.
In light of the Court’s resolution of the substantive issue on direct appeal, Mendoza’s attempt to raise this claim as one of ineffective assistance is improper. As explained in Conde v. State, 35 So.3d 660 (Fla.2010), “[bjecause this Court has already held that the exclusion of [the witness’s] testimony was harmless error, [defendant] cannot establish prejudice in his ineffective assistance of counsel claim.” Id. at 664 (citing Cox v. State, 966 So.2d 337, 347-48 (Fla.2007)).[12] The claim is denied.
3. Calling Codefendant Humberto Cuellar as a Witness
Mendoza argues that by calling codefendant Humberto Cuellar to testify as a witness at the penalty phase, trial counsel provided ineffective assistance. Humberto testified that there was no intent to kill the victim, but only an intent to commit a robbery. According to Mendoza, presenting such testimony, inconsistent with the defense’s guilt-phase theory of the case, only served to bolster Humberto Cuellar’s credibility and diminish that of the defendant.
Mendoza did not raise this claim before the circuit court as is now argued.[13] Accordingly, having been raised for the first time on appeal, the claim is denied as procedurally barred. See Franqui, 965 So.2d at 32. Moreover, the jury previously found Mendoza guilty of attempted armed robbery. Mendoza does not address how he was prejudiced where trial counsel in essence accepted the jury’s verdict and attempted to demonstrate that Mendoza did not intend to commit murder, what the jury presumably would have seen as the more egregious act.
C. Fairness of Mendoza’s Rule 3.851 Evidentiary Hearing
Based upon the circuit court’s actions in denying his motion to disqualify and excluding the admission of certain proffered testimony and documentary evidence at the hearing, Mendoza argues that he was denied a full and fair evidentiary hearing. We disagree.
1. Motion to Disqualify
Florida Rule of Judicial Administration 2.330 controls the process governing disqualification of a presiding judge. Subdivision (f) provides:
Determination — Initial Motion. The judge against whom an initial motion to disqualify under subdivision (d)(1) is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no fur *662 ther in the action. If any motion is legally insufficient, an order denying the motion shall immediately be entered. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion.
Fla. R. Jud. Adm. 2.330(f).[14] Under subdivision (g), however, the standard differs for successive motions:
If a judge has been previously disqualified on motion for alleged prejudice or partiality under subdivision (d)(1), a successor judge shall not be disqualified based on a successive motion by the same party unless the successor judge rules that he or she is in fact not fair or impartial in the case. Such a successor judge may rule on the truth of the facts alleged in support of the motion.
Fla. R. Jud. Adm. 2.330(g). In addition, the rule provides that the motion must be filed within a reasonable time not to exceed ten days after the discovery of the facts constituting the basis for the motion. Fla. R. Jud. Adm. 2.330(e).
Substantively, the disqualification of a judge is governed by section 38.10, Florida Statutes (2010). This Court’s review of a trial judge’s determination on a motion to disqualify is de novo. Chamberlain v. State, 881 So.2d 1087, 1097 (Fla.2004). “Whether the motion is legally sufficient is a question of law.” Parker v. State, 3 So.3d 974, 982 (Fla.2009).
The Court’s most recent remand order directed the circuit court to appoint a new judge to preside over Mendoza’s postcon-viction proceeding and that a new eviden-tiary hearing be held. See Mendoza, 964 So.2d at 128 & n. 7 (noting that the former judge presiding over Mendoza’s postcon-viction case was then deceased). Circuit Court Judge Dava J. Tunis thereafter was assigned. An evidentiary hearing was later scheduled to begin June 9, 2008. During the sixth day of the hearing, on June 18, 2008, Mendoza’s counsel expressed concern for the first time with respect to the judge’s impartiality. Counsel requested leave to file a written motion to disqualify based upon comments relating to defense counsel’s proffer of testimony of his gunshot residue expert witness and pertaining to the claim of ineffective assistance of trial counsel for failing to obtain an independent gunshot residue expert. Judge Tunis granted counsel’s request and ordered that the written motion be filed by the following week.[15]
Mendoza filed his written motion to disqualify on June 24, 2008, citing Florida Rule of Judicial Administration 2.330 (Disqualification of Trial Judges). Arguing that the circuit judge had prejudged at least three issues raised in his amended motion, Mendoza identified the following statements made by Judge Tunis: (1) that trial counsel made a strategic decision to call as a witness the State’s gunshot residue expert; (2) that defendant spoke “perfect” English and was “intelligent,” “well educated,” and “articulate”; and (3) that the standards for representation were different than they are now, without hearing testimony from Mendoza’s witness tendered as a legal expert.
The circuit judge, in ruling upon Mendoza’s motion to disqualify, treated the motion as an initial one as argued by Mendoza and held that the motion was legally *663 insufficient. The State, however, argued that because this Court ordered the assignment of a new judge upon the first remand to the circuit court, see Mendoza v. State, 817 So.2d 848 (table), Nos. SC01-735 & SC01-1963 (Fla. order filed Apr. 3, 2002), the Court effectively found that Mendoza’s first motion to disqualify should have been granted. Under the State’s reasoning, the second motion to disqualify constituted a successive motion.
First, we observe that Mendoza’s argument before this Court is limited to the first statement identified in his motion to disqualify, i.e., that the circuit court had predetermined that trial counsel’s decision to not present the testimony of an independent gunshot residue expert was reasonable trial strategy. Accordingly, we conclude that Mendoza has abandoned the disqualification claim with respect to the second and third statements previously identified in his motion to disqualify.[16]
Second, we also observe that with the assignment of a new judge following the Court’s first remand order, Mendoza explicitly sought to avail himself of the rule permitting reconsideration of specific rulings made by the first judge presiding over the amended motion.[17] That is, while the Court did not address the basis for the reassignment order, Mendoza treated the Court’s order as a determination that his motion to disqualify should have been granted. In his subsequent attempt to disqualify Judge Tunis, however, Mendoza relied upon the provision governing initial motions, see Fla. R. Jud. Adm. 2.330(f), which places a less arduous burden on the movant.[18] The Court does not sanction such jockeying of positions within the course of continuing litigation. Therefore, although the circuit court applied the standard more favorable to Mendoza, we decline to accede to Mendoza’s changing position dependent upon the circumstances in which the matter arises. Since Mendoza sought to obtain the benefits of having successfully challenged the judge’s impartiality by his initial motion to disqualify, we review the denial of the instant motion under the standard applicable to successive motions.
Before the circuit court, Mendoza made the following argument in seeking to disqualify Judge Tunis:
One of the issues before the Court is whether trial counsel for Mr. Mendoza was ineffective for failing to hire an independent gunshot residue (GSR) expert to assist in investigating the gunshot residue analysis work done by Metro-Dade Police Department (now the Miami-Dade Police Department) crimi *664 nologist Gopinath Rao prior to making the decision to put Mr. Rao on the stand as a defense expert and the defense’s sole witness in the penalty phase of Mr. Mendoza’s 1994 trial.[19] In order to prove the prejudice prong of the Strickland standard, undersigned counsel sought to elicit the testimony of an independent gunshot residue expert, Celia Hartnett, who began her testimony on June 18, 2008. The State made several evidentiary objections to Ms. Hartnett’s testimony. During argument on one of the State’s objections, the Court inquired of counsel for Mr. Mendoza the reason for eliciting Ms. Hartnett’s testimony. The Court asserted that trial counsel had made a “strategic decision” to call Rao as a defense witness, and that trial counsel had testified to that effect earlier in the hearing. When counsel explained that it was to prove the prejudice prong of the claim that trial counsel was ineffective for failing to consult an independent gunshot residue expert pursuant to Strickland, the Court repeatedly stated that trial counsel had made a “strategic decision” to call Rao and also gave reasons as to why trial counsel’s strategy was reasonable. Since the issue of whether trial counsel’s decision to call Rao was a valid strategy is germane to the deficient performance prong of Strickland, the announcement by the Court that trial counsel made a “strategic decision” amounts to a predetermination of the issues of the case, prior to the completion of the hearing and the submission of closing argument. As such, Mr. Mendoza has a reasonable fear that he will not receive a fair hearing before this Court because of actual bias and the appearance of bias by the Court.
(Footnote omitted.)
The record does not support Mendoza’s recitation of the facts upon which he then relies to demonstrate prejudice. In the course of considering the State’s objection to the admission of testimony from one gunshot residue expert about the credibility and quality of work of the defense’s former gunshot residue expert, Judge Tunis did not make a finding that trial counsel made a strategic decision which was reasonable. Rather, the transcript reflects that the circuit judge was recalling trial counsel’s earlier testimony. We affirm the denial of the motion to disqualify.
2. Evidentiary Rulings
Mendoza also argues that adverse evidentiary rulings upon defense witness testimony and defense exhibits further demonstrate that he did not receive a full and fair hearing. However, adverse rulings by a judge are generally considered legally insufficient to warrant a judge’s disqualification. Ault v. State, 58 So.3d 175, 204 (Fla.2010). With respect to the circuit court’s evidentiary rulings, “[i]t is well settled that ‘[t]he admissibility of evidence is within the sound discretion of the trial court, and the trial court’s determination will not be disturbed on appellate review absent a clear abuse of that discretion.’ ” Rimmer v. State, 59 So.3d 763, 774 (Fla.2010) (quoting Brooks v. State, 918 So.2d 181, 188 (Fla.2005)).
*665 Mendoza called as a witness Steven Po-tolsky, an attorney who has specialized in capital defense since approximately 1987. Mendoza sought to elicit testimony pertaining to trial counsel’s actions with respect to the following: (1) gunshot residue on Lazaro and Humberto Cuellar; (2) the presentation of inconsistent and mutually exclusive defense theories offered by trial counsel; (8) failure to call Lazaro Cuellar; (4) failure to investigate mitigation; (4) “opening the door” to inadmissible and prejudicial evidence in penalty phase; and (5) the lack of meaningful experience and training and the failure to consult with more experienced counsel. Mendoza argues that this type of testimony is similar to that allowed in State v. Riechmann, 111 So.2d 342 (Fla.2000), where Mr. Potolsky testified and upon which testimony this Court expressly relied. Id. at 848. While not addressed by either party, the eviden-tiary hearing transcript reflects that the circuit court allowed Mr. Potolsky’s testimony in an abundance of caution. Accordingly, this claim is without merit.[20]
Mendoza also called Dr. Holly Ackerman to testify as a defense expert. She has a Ph.D. in international relations and has specialized in the study of various refugee migrations out of Cuba during the 1980s and 1990s. The purpose of her testimony was to show that the experiences of Mendoza and his family were consistent with established historical fact and those of other refugees interviewed by Dr. Ackerman. Mendoza argues that this information would have assisted trial counsel in understanding Mendoza’s early life and “to help the jury understand the traumatic experiences he underwent during his teenage years.” The circuit court also admitted her testimony in an abundance of caution, except for opinion testimony. Because Dr. Ackerman was a student at the time of Mendoza’s trial and therefore would have been unavailable to testify as an expert, the circuit court did not abuse its discretion in rejecting Dr. Ackerman’s opinion testimony. The claim for relief is denied.
Turning to the testimony and documentary evidence not admitted at the hearing, we first conclude that the circuit court did not abuse its discretion in excluding the testimony of Odalys Rojas. Mendoza sought to present her testimony on the issue of counsel’s failure to investigate and present mitigating evidence. Ms. Rojas would have testified that she spoke with Mendoza’s family members, friends, and teachers who were available at the time of trial and would have been willing to testify had they been contacted by counsel. Mendoza openly admits that Ms. Rojas would have testified to what she had been told by the various individuals; Mendoza argues that this testimony was not hearsay because it would not have been offered for the truth of the matter asserted, but to demonstrate the availability of the witnesses to trial counsel. We disagree, and observe that Mendoza has offered no explanation why repeating statements made to the witness to establish the fact at issue, that there were witnesses available that counsel had not contacted, would not constitute inadmissible hearsay.
Mendoza also argues that the circuit court erroneously excluded the testimony of Alexander Suarez. Mendoza contends that the State could have impeached Mr. Suarez based upon his numerous convictions. However, Mr. Suarez refused to answer the State’s questions during cross- *666 examination. Thus, the State could not confront Suarez pertaining to the subject of his testimony and was denied a fair opportunity to rebut the alleged evidence that Humberto Cuellar admitted to Mr. Suarez that he and not Mendoza had shot the victim. We reject Mendoza’s argument that the State could, nonetheless, impeach Mr. Suarez based upon his numerous convictions.
With respect to the exclusion of certain physical evidence, the circuit court also did not abuse its discretion. At the evidentiary hearing, Mendoza sought to have admitted Quantitative Electroencephalogram (QEEG) test results. Because such a test had not passed the Frye test[21] at the time Mendoza was tried, the circuit court granted the State’s motion to exclude on the basis that the issue was whether counsel rendered ineffective assistance in 1992 at the time of trial. The circuit court did not abuse its discretion.
Next, Mendoza argues that he was entitled to present into evidence the materials relied upon by his experts. However, as stated by the Court in Linn v. Fossum, 946 So.2d 1032 (Fla.2006),
Florida courts have routinely recognized that an expert’s testimony “may not merely be used as a conduit for the introduction of the otherwise inadmissible evidence.”
The rationale for this prohibition is twofold. First, allowing the presentation of otherwise inadmissible evidence merely because an expert relied on it in forming an opinion undermines the rules of evidence that would have precluded its admission....
Second, testimony that serves as a conduit for inadmissible evidence is inadmissible under section 90.403, Florida Statutes (2005), because its probative value is “substantially outweighed by the danger of unfair prejudice, confusion of issues [or] misleading the jury.”
Id. at 1037-38 (quoting Erwin v. Todd, 699 So.2d 275, 277 (Fla. 5th DCA 1997); Schwarz v. State, 695 So.2d 452, 455 (Fla. 4th DCA 1997)). Thus, the circuit court did not abuse her discretion in excluding admission of the otherwise inadmissible hearsay materials relied upon by the experts in reaching their conclusions.
Mendoza also argues that the circuit court erroneously excluded documents from trial counsel’s file. The only documents excluded were two attorney billing statements which the testimony established were not complete and were therefore not an accurate reflection of the work counsel had performed. Mendoza has not demonstrated an abuse of discretion.

III. CONCLUSION

Based on the foregoing, we affirm the circuit court’s order denying Mendoza’s rule 3.851 amended motion.
It is so ordered.
LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., and PARIENTE, J., concur in result.

. Before the case was submitted to the jury, the State conceded that it had failed to carry its burden of proof on the charge of premeditated first-degree murder.

. Mendoza presented the testimony of Nilia Mendoza, his mother; Dr. Jethro Toomer, a psychologist; and codefendant Humberto Cu-ellar. The defense also introduced into evidence Mendoza’s childhood medical record from Cuba. The State did not present additional evidence in the penalty phase.

. Spencer v. State, 615 So.2d 688 (Fla. 1993) (reiterating that in a capital case, following a jury’s recommendation of death, the trial judge shall hold a hearing providing the defendant, his attorney, and the State the opportunity to be heard by the trial court alone and to present additional evidence and argument, before pronouncing sentence).

. Mendoza received a sentence of life imprisonment for the armed burglary with an assault conviction and two terms of fifteen years’ imprisonment for the convictions for conspiracy to commit robbery and attempted armed robbery with a firearm.

. Mendoza raised the following issues on direct appeal":
(1) the evidence presented was not sufficient to convict appellant for burglary as an underlying crime in the felony murder conviction; (2) the trial court erred in allowing the State to introduce as substantive evidence the sworn prior consistent statement of Humberto Cuellar; (3) the trial court erred in denying appellant’s motion for mis *650 trial based on the judge's ex parte communications with jurors; (4) the trial court erred in denying three challenges for cause to prospective jurors based on their beliefs concerning the death penalty; (5) the trial court erred during the penalty phase in excluding mitigation evidence; (6) the trial court erred in allowing the State to impeach appellant's expert witness by asking him whether he had considered appellant’s criminal history and in allowing the State to comment during closing argument on appellant's pending criminal charges; (7) the trial court erred in finding as an aggravating circumstance that the murder was committed for pecuniary gain; (8) the trial court erred in failing to adequately address in the sentencing order appellant's proposed mitigation; and (9) the death penalty is not proportionally warranted in this case.
Mendoza, 700 So.2d at 673 n. 1.

. Those claims are as follows:
(1) Mendoza had insufficient access to public records; (2) Mendoza was denied a fair trial due to the cumulative effects of ineffective assistance of counsel, withholding of exculpatory or impeaching material, newly discovered evidence, and improper trial court rulings; (3) the State withheld evidence that was exculpatory and material; (4) trial counsel was ineffective for failing to challenge jurors based on their biases toward the death penalty; (5) the State's arguments and the trial court's statements at trial presented impermissible considerations to the jury, misstated the law and facts, and were inflammatory and improper; (6) Mendoza was denied the right to an adequate mental health evaluation; (7) trial counsel failed to investigate and prepare mitigating evidence; (8) Mendoza is innocent of first-degree murder; (9) Mendoza is innocent of the death penalty; (10) incorrect penalty phase jury instructions were given by the trial judge; (11) the trial court gave erroneous instructions to the jurors on the standard by which they must judge expert testimony; (12) the jury received inadequate guidance on aggravating circumstances; (13) the State improperly introduced nonstatutory aggravating factors; (14) prosecutorial and judicial comments to the jury mischaracterized the importance of the jury's role; (15) Florida’s rules prohibiting appellate counsel from interviewing jurors are unconstitutional; (16) trial counsel was ineffective for failing to object to the State's overbroad and vague arguments in aggravating circumstances; (17) execution by electrocution or lethal injection is cruel and unusual punishment; (18) Florida’s capital sentencing scheme is unconstitutional; (19) pretrial publicity and failure to change venue denied Mendoza a fair and impartial jury; (20) the trial court erred in refusing to find and consider mitigating circumstances clearly set out by the record; (21) the trial court's sentencing order does not reflect an independent weighing or reasoned judgment; (22) Mendoza was denied a proper direct appeal because of omissions in the record; (23) it was unconstitutional for the judge and jury to consider Mendoza’s prior conviction in the penalty phase; (24) the death sentence was predicated on an automatic aggravating factor; (25) the trial judge was not impartial; (26) Mendoza is insane to be executed; and (27) the jury venire was not properly sworn before trial.
See Mendoza v. State, 964 So.2d 121, 126 n. 3 (Fla.2007).

. An evidentiary hearing was not held with respect to the initial review of Mendoza's rule 3.851 amended motion. In Mendoza’s first appeal, in an unpublished order dated April 3, 2002, we specifically directed that the circuit court, upon appointment of a new judge, hold an evidentiary hearing on Mendoza’s claims of ineffective assistance of trial counsel. See Mendoza, 964 So.2d at 127 (citing Mendoza v. State, 817 So.2d 848 (Fla.2002) (table)). Although a hearing was held on remand, the circuit court again summarily denied defendant’s claims, while setting out the standards *651 applicable to ineffective assistance of counsel claims. Mendoza, 964 So.2d at 128. Because the circuit court’s two-page order failed to individually and expressly address the claims raised in the postconviction motion, the case was again remanded. Id. at 129. A new evidentiary hearing was necessarily because the circuit judge who previously presided over the hearing was deceased. Id.

. The Court previously denied Mendoza’s petition for writ of habeas corpus that had been filed with his appeal of an earlier denial of rule 3.851 relief. See Mendoza, 964 So.2d at 129.

. In 1989, the American Bar Association (ABA) first published the guidelines, available from the ABA's website at http://www. americanbar.org(content/dam/aba/migrated/ DeathPenalty/RepresentationProject/Public Documents/1989Guidelines.authcheck-dam.pdf, which was revised in 2003. See American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 31 Hofstra L.Rev. 913 (2003) (reprinted). As explained in the revised version of the ABA Guidelines, Guideline 10.10.1 was a stylistic revision of former Guideline 11.7.1 in the 1989 edition.

. At the evidentiary hearing, defense attorney Arnaldo Suri, one of Mendoza’s trial lawyers and the one chiefly responsible for the guilt phase, testified concerning the defense theory of the case as follows:
Well, our theory of the case was that there was some question as to whether in fact this was a robbery. What we had gotten in taking the deposition, I believe of Lazaro Cuellar and this information from him that Mr. Calderon owed Mr. Mendoza and Mr. Humberto Cuellar some money and that they went there to seek repayment. *654 I think that’s generally the working assumption in the guilt phase.
Attorney Suri also testified as to the defense theory of the identity of the shooter in the case:
We thought that the evidence was inconclusive and we felt that this was extremely important to raise doubt in the guilt phase about the possible shooters.
The reason we felt that way was because the State had offered fairly generous plea offers to the Cuellar brothers. We thought if we can raise a doubt who the shooter was and like I said the evidence was inconclusive and there was some forensic evidence, physical evidence to suggest perhaps that one of the Cuellar brothers was the shooter, that we would have a fairly powerful argument to the jury that this was not a death penalty case, based upon the proportionality and based with quite frankly on the facts of the case were not clear as to who of the three individuals was the shooter. I think that’s basically our view of the case.

. Based upon the Court’s scrutiny of the transcripts of defense counsel’s opening statement and closing argument, as well as that of defense counsel's testimony before the circuit court at the evidentiary hearing, we do not understand the defense theory as necessarily turning upon who fired the weapon, but rather that this defendant did not. Relevant to this claim, defense attorney Arnaldo Suri made the following opening statement:
The evidence in this case is going to prove and show you that there is absolutely no evidence that Marbel Mendoza shot anybody, or even that he had a gun on March 17th of 1992.
On the contrary, you know what tire physical evidence is going to show? You know that the state’s expert witnesses are going to come over here and testify, too, that Humberto Cuellar and his brother, Lazaro Cuellar, had gunpowder residue all over their hands, because, you see, when the Calderone [sic] brothers were stopped and arrested at the hospital one of the things the detective from Hialeah did was send an expert technician to hand-swab their hands just in case tire Cuellar brothers were involved in the shooting of Mr. Calderone a few minutes earlier.
This actually took place three and a half hours later when they got arrested, and the hand swabs of the Cuellar brothers were taken, and, lo and behold, later on when the state's expert witness checked those hand swabs they found so many particles— he said he found so many particles on Humberto Cuellar that he stopped counting. Lazaro Cuellar — who they just told you was in he [sic] car — he counted 21 on one hand. That is the physical evidence.
So, where is their version — where does it come from? Very detailed, right? You know where it comes from, it comes from Humberto Cuellar, and that’s the state's version. That is Humberto Cuellar’s story, and that is what you are going to hear.
[[Image here]]
Humberto Cuellar comes in here and says, "Guess who the shooter is? Marbel Mendoza.” Who is he with; his brother. His brother gets to stay in the car, but interestingly enough, whose gun was used to hit Mr. Calderone over the head? It was Marbel Mendoza's gun.
No, there is no evidence that Marbel Mendoza even had a gun. You know whose gun that was that was found with hair particles later when the state’s expert checked it out? That was Lazaro Cuellar’s gun, the other brother, the one who supposedly stayed in the car and who had gunpowder residue on his hands.
What is the physical evidence and who gets shot in this case?
We know you are going to find out from the evidence that Mr. Calderone, in fact, did fire his gun, three shots. And who gets hit by that shot? Not Marbel Mendoza, but Humberto Cuellar, because he’s the one who did the shooting. That’s who Mr. Cal-derone shot.
What is the physical evidence, again?
He had so many particles of gunpowder on him that the state’s expert stopped counting. So, you ask yourself during this trial does Humberto Cuellar’s story hold up or does the physical evidence hold up.
(Emphasis added).

. As noted on direct appeal, were the case remanded for a new penalty phase, "the State would be entitled to introduce as aggravating factors appellant's subsequent guilty pleas and sentences in four other cases for multiple counts of robbery, aggravated battery, kidnapping, and firearms offenses.” Mendoza, 700 So.2d at 678 n. 2 (citing cases). The same holds true here.

. Mendoza argued in his amended postcon-viction relief motion that by presenting Humberto Cuellar’s testimony at the penalty phase, trial counsel effectively conceded the contemporaneous felony/pecuniary gain aggravator. There is no question, however, that the jury previously convicted Mendoza of attempted armed robbery.

. Subdivision (d)(1) of rule 2.330 provides that a motion to disqualify shall show "that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge.”

. The circuit court also addressed how the case would proceed procedurally: if the motion to disqualify was granted, the case would be reassigned to a different judge, and if denied, the hearing would resume.

.To the extent Mendoza seeks to incorporate by reference the other factual bases and arguments thereto raised in his motion to disqualify for purposes of appeal, having cited in his brief the record pages of the motion to disqualify and providing no argument, the rules of appellate procedure do not authorize that practice. See Fla. R.App. P. 9.210(b)(5) (providing that the initial brief shall contain "[a]rgument with regard to each issue including the applicable appellate standard of review”). We deem abandoned those other bases previously alleged in support of disqualification. See Chamberlain, 881 So.2d at 1103.

. In April 2002, when Mendoza sought such relief, the Florida Rules of Judicial Administration had not yet undergone renumbering. The applicable rule at the time, rule 2.160(h), is now designated rule 2.330(h). See In re Amendments to the Florida Rules of Judicial Administration — Reorganization of the Rules, 939 So.2d 966 (Fla.2006).

. To disqualify a judge upon an initial motion, the movant need only demonstrate that the facts alleged, which must be assumed to be true, would cause the movant to have a well-founded fear that he or she will not receive a fair trial at the hands of that judge.

19. Mendoza’s reference to the penalty phase, as opposed to the guilt phase, is in error. In his motion for postconviction relief, Mendoza’s claim of ineffective assistance with respect to counsel’s investigation and presentation of the gunshot residue evidence pertained to the guilt phase of trial, when the evidence was presented. As observed previously, and necessarily addressed by the parties in light of Mendoza’s penalty-phase ineffective assistance of counsel claims, evidence at that stage of trial was elicited from three individuals, including Mendoza’s mother, Dr. Toomer, and Humberto Cuellar.

. The fact that the same expert witness testified in an unrelated proceeding, see State v. Riechmann, 777 So.2d 342 (Fla.2000), does not establish the admissibility of his or her testimony in another case. Riechmann did not address whether Mr. Potolsky’s testimony was properly admitted at the evidentiary hearing.

. Frye v. United States, 293 F. 1013 (D.C.Cir. 1923).